IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DAVID P. RODRIGUEZ, § | | |
| TDCJ No. 02070884, § | | |
|     Petitioner, § | | |
| § | | |
| v. § | EP-19-CV-220-DB | |
| § | | |
| BOBBY LUMPKIN,[1] § | | |
| Director, Texas Department of § | | |
| Criminal Justice, Correctional § | | |
| Institutions Division, § | | |
|     Respondent. § | | |

## MEMORANDUM OPINION AND ORDER

David P. Rodriguez challenges Bobby Lumpkin's custody of him through a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. Pet'r's Pet., ECF No. 4. Rodriguez claims his trial counsel provided constitutionally ineffective assistance and the trial court abused its discretion. *Id.* at 6–7. Lumpkin answers the Court should deny the petition because Rodriguez's "claims are meritless" and he fails to establish the state court's previous rejection of them was objectively unreasonable. Resp't's Answer 1, ECF No. 8. The Court, after reviewing the record, will deny the petition. The Court will additionally deny Rodriguez a certificate of appealability.

### BACKGROUND AND PROCEDURAL HISTORY

On June 29, 2015, Rodriguez rode with his girlfriend, Yvette Talmates, to a friend's house for a cookout. *Rodriguez v. State*, No. 08-16-00113-CR, 2018 WL 2010551, at *1 (Tex.

---

[1] Petitioner names Lorie Davis, the former Director of the Correctional Institutions Division, as Respondent. Bobby Lumpkin recently replaced Davis as Director. Lumpkin is automatically substituted for Davis pursuant to Federal Rule of Civil Procedure 25(d).

App. Apr. 30, 2018). He became aggressive when Talmates suggested that they leave. *Id.* He "slapped her hard in the face and knocked her to the ground." *Id.* He then struck her, pulled her hair, and kicked her in the head, back, and legs. *Id.* He relented only when the hostess told him she was calling the police. *Id.* He walked to the nearby home he shared with Talmates where he was arrested by the police. *Id.*

Rodriguez was indicted for assault on a household member, enhanced by a prior robbery conviction, in cause number 20150D03170 in the 120th Judicial District Court in El Paso County, Texas (Case One). Clerk's R. 9, Indictment, ECF No. 9-10. Due to the enhancement, he faced a sentence of twenty-five years to life in prison. Clerk's R. (Case One) 80, Plea Agreement, ECF No. 9-11. He pleaded not guilty to the indictment and proceeded to trial. During his trial, the State's expert witness, Stephanie "Carr[,] explained why victims of family violence recant abuse allegations, bail their abusers out of jail, and sign non-prosecution statements: out of feelings of guilt or remorse; fear of retaliation; and fear the abuser will be unable to provide financial support to the victim and her dependents while in jail." *Rodriguez*, 2018 WL 2010551, at *3. After hearing this and other evidence, the jury found Rodriguez guilty as charged. Reporter's R., vol. 5, p. 147, ECF No. 9-16.

Rodriguez had two other cases pending in the same court: cause number 20140D01101 for aggravated sexual assault of a child and indecency with a child (Case Two), and cause number 20150D04857 for assault on a household member (enhanced) (Case Three). *Rodriguez v. State*, State's Letter Br., 2016 WL 7426968. Before the punishment stage in Case One commenced, his counsel negotiated plea agreements which required him to enter guilty pleas in all three cases in exchange for the State recommending concurrent forty-year terms of

imprisonment. Clerk's R. (Case One) 79–88, Plea Agreement, ECF No. 9-11; Clerk's R. (Case Two) 28–37, Plea Agreement, ECF No. 9-5; Clerk's R. (Case Three) 6–15, Plea Agreement, ECF No. 9-33. He was found guilty on his pleas and sentenced to concurrent terms of forty years' imprisonment in each case by the trial court. Clerk's R. (Case One) 107–08, J. of Conviction—Waiver of Jury Trial, ECF No. 9-11; Clerk's R. (Case Two)10–13, J. of Conviction—Waiver of Jury Trial, ECF No. 9-5; Clerk's R. (Case Three) 18–19, J. of Conviction—Waiver of Jury Trial, ECF No. 9-33.

Rodriguez raised two issues in his direct appeal in Case One. *Rodriguez*, 2018 WL 2010551. He first asserted the trial court abused its discretion when it permitted the State to call Stephanie Carr to testify as an expert on family violence. *Id.* at *1. He argued "Carr lacked a scientific degree or membership in a scientific organization, and claim[ed] the State was only able to establish Carr had previously testified as an expert witness in other cases." *Id.* at *2. He then claimed "the trial court improperly admitted evidence of an extraneous offense" when it permitted "the State to introduce a booking photograph from his arrest the night of the assault after [his] counsel had introduced a booking photograph of [him] from a different case." *Id.* at *3.

The Eighth Court of Appeals affirmed the judgment of the trial court. *Id.* at *4. It explained "[q]ualification is a two-step inquiry into whether: (1) the witness has sufficient background in a particular field; and (2) the trial court is satisfied that background goes to the matter on which the witness is to give an opinion." *Id.* at *2 (citing *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010)). It noted Carr testified in detail about her expertise in the field of family violence:

>   (1) she was then the executive director of the Center Against Sexual and Family Violence and had been for eight years; (2) she had previously been the executive director of the Child Crisis Center for thirteen years, where she worked with abused or neglected children; (3) she had attended and given presentations on domestic violence at state and national conferences; (4) she was an active member of the Texas Association Against Sexual Assault Primary Prevention Task Force; (5) she was previously a member of the Texas Council on Family Violence Public Policy Committee; and (6) based on the foregoing, she had a total of twenty-one years' of experience in the field of family violence.

*Id.* It also noted Rodriguez did "not put forth any significant argument regarding the second inquiry of the qualifications test." *Id.* As a result, it overruled his first objection. *Id.* It then addressed Rodriguez's second claim. *Id.* at *3. It explained Rodriguez introduced a booking photograph of himself with a black eye "to support a defensive theory that Yvette [Talmates] had been the initial aggressor." *Id.* It further explained the State then offered "a different booking photograph in which [Rodriguez] had no visible injuries, along with a redacted booking sheet showing the booking time as June 29, 2015, the date of the charged offense." *Id.* It overruled the second issue, reasoning Rodriguez "opened the door to the admission of the State's booking photograph and thus evidence he had previously been arrested and charged on another occasion." *Id.*

Rodriguez's also appealed his sentence in Case Two. *Rodriguez v. State*, No. 08-16-00112-CR, 2017 WL 360688, at *1 (Tex. App. Jan. 25, 2017). His appeal was dismissed by the Eighth Court of Appeals because the trial court certified he had waived his right to appeal this case in the plea agreement. *Id.*

Rodriguez next sought state habeas corpus relief. State Habeas R. 35–52, Application (Case One), ECF No. 9-31; State Habeas R. 33–38, Application (Case Two), ECF No. 9-24; State Habeas R. 1–12, Application (Case Two), ECF No. 9-25; State Habeas R. 24–32,

Application (Case Three), ECF No. 9-33; State Habeas R. 1–13, Application (Case Three), ECF No. 9-34. He raised the same three issues in each application. First, he claimed his counsel coerced him into entering his guilty pleas. Second, he argued his Fifth and Sixth Amendment rights were violated when his counsel did not object under Texas Code of Criminal Procedure articles 38.23 (evidence not to be used) and 38.37 (evidence of extraneous offenses or acts) to the introduction of evidence of a prior arrest. Finally, he maintained he was denied due process when his counsel twisted his arm to plead guilty. His state applications were all denied by the Texas Court of Criminal Appeals without a written order. State Habeas R., Action Taken (Case One), ECF No. 9-30; State Habeas R., Action Taken (Case Two), ECF No. 9-23; State Habeas R., Action Taken (Case Three), ECF No. 9-32.

Mindful of Rodriguez's pro se status, the Court understands him now asserts three claims in his federal petition. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). First, he contends his counsel coerced him into accepting a forty-year plea offer. Pet'r's Pet. 6, ECF No. 4. Second, he asserts that his trial counsel improperly permitted the trial court to consider evidence of extraneous offenses or acts and evidence obtained in violation of his rights. *Id.* Finally, he argues the trial court abused its discretion when it admitted into evidence the testimony of an unqualified expert witness, Stephanie Carr, which resulted in his erroneous conviction. Mem. in Supp. 2, 9, 13, ECF No. 1-2.

Lumpkin believes that Rodriguez filed his petition in a timely manner. Resp't's Resp. 4, ECF No. 8. He also believes that Rodriguez has sufficiently exhausted his state court remedies. *Id.* But he maintains Rodriguez's "claims are meritless and cannot overcome the . . . relitigation bar." *Id.* at 1.

## APPLICABLE LAW

"[C]ollateral review is different from direct review," and the writ of habeas corpus is "an extraordinary remedy," reserved for those petitioners whom "society has grievously wronged." *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993). It "is designed to guard against extreme malfunctions in the state criminal justice system." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). It provides for an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions.").

As a result, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow. "Indeed, federal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). They must generally defer to state court decisions on the merits. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). And they must defer to state court decisions on procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998). They may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

For claims that were adjudicated in state court, 28 U.S.C. § 2254(d) imposes a highly deferential standard which demands a federal habeas court grant relief only where the state court judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(2). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Moreover, the federal habeas court's focus is on the state court's ultimate legal conclusion, not whether the state court considered and discussed every angle of the evidence. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion"). Indeed, state courts are presumed to "know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Factual findings, including credibility choices, are entitled to the statutory presumption, so long as they are not unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Further, factual determinations made by a state court enjoy a presumption of correctness which the petitioner can rebut only by clear and convincing evidence. *Id.* § 2254(e)(1); *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact). The presumption of correctness applies not only to express findings of fact, but also to "unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

In sum, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (quoting *Jackson*, 443 U.S. at 332, n.5). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## ANALYSIS

### A. Coercion

Rodriguez first asserts his counsel deliberately misrepresented "by coercion . . . to plead to 40 [years] over 20 [years] offered by the prosecutor." Pet'r's Pet. 6, ECF No. 4.

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). That "right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). Ineffective assistance claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To successfully state a claim, a petitioner must demonstrate (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94. Unless the petitioner establishes both—deficient performance and prejudice—his ineffective assistance of counsel claim fails. *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002).

When a criminal defendant argues that he rejected a plea offer and chose to stand trial based on the ineffective assistance of counsel, he:

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in

-8-

fact were imposed.

*Lafler*, 566 U.S. at 164. Additionally, he must still meet the two-part test set forth in *Strickland*. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

The record suggests Rodriguez rejected the State's offer of a twenty-year sentence if he pleaded guilty in Case One. It shows the following exchange occurred during his sentencing:

> THE DEFENDANT: Your Honor, . . . I was offered 20 years from the Court.
>
> THE COURT: Not from me, sir.
>
> THE DEFENDANT: From the district attorney.
>
> THE COURT: Okay.
>
> THE DEFENDANT: Okay? Now, they came to me and said, "We got nothing to lose. If you lose, I'll get you 25." Five more years. So that's the only reason --
>
> THE COURT: But we're in trial now. Do you see how things change?
>
> THE DEFENDANT: I understand.
>
> THE COURT: The state doesn't have to offer you --
>
> THE DEFENDANT: But they -- they didn't bring me none of this to my attention. None of this.
>
> THE COURT: Bring what to your attention?
>
> THE DEFENDANT: Well, all what's going on right now. It's just -- was just one case. They said, "25, so we got nothing to lose. Five more years is nothing for you."
>
> THE COURT: . . . . The state doesn't have to offer you anything at any point. It's my policy and practice that before we take up the resources for a trial that you ought to know how they evaluate the case. If they think they can get 25, 30, whatever, they ought to tell you that. Their evaluation in this case was below that. *You decided not to take it.* So the fact that you were now not given 25, I'm

-9-

> not sure how you thought that was going to happen once we seated a jury. All bets are off once we start that because you weren't going to plead guilty before the verdict came back in, were you? There was no offer on the table. All offers are off. All bets are off.

Reporter's R. 9-11, ECF No. 17 (emphasis added). Notably, Rodriguez did not object when the trial judge said "*you* decided not to take" the State's original offer. He did not claim his counsel failed to communicate the first plea offer to him. He did not assert his counsel failed to advise him of his options regarding a guilty plea. He has not demonstrated a reasonable probability that he would have accepted the first plea offer had he been afforded effective assistance. And he has not shown the trial court would have accepted its terms. Thus, he has not overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 at 688–89.

The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Machibroda v. United States*, 368 U.S. 487, 493 (1962). Hence, any challenge to a conviction that was obtained by a guilty plea is limited to issues of voluntariness, the defendant's understanding of the charges against him, and his understanding of the consequences of the plea. *Hill*, 474 U.S. at 56–57. In *McMann v. Richardson*, the Supreme Court explained that where a defendant enters a plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." 397 U.S. 759, 771 (1970). Thus, a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth

-10-

in *McMann*." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

The record contradicts Rodriguez's claim that his attorney coerced his guilty plea. It shows he voluntarily signed a "Plea Agreement, Notice to Defendant of Rights, Written Admonishments, Waiver of Rights, and Judicial Confession." Clerk's R. (Case One) 79–88, Plea Agreement, ECF No. 9-11. The plea agreement advised him of his rights and the possible range of punishment he faced upon his conviction for assault on a household member (enhanced)—twenty-five years to life in prison. *Id.* at 80, 83. The plea agreement contained an acknowledgement that he was *not* coerced into entering the plea:

> I have been made aware of the consequences of entering a plea of guilty to the charges above and represent to the Court that *I have not been forced, coerced, or promised anything in return for entering my plea of guilty* and that I am mentally competent to enter said plea and waive my right to trial. I waive these rights voluntarily and without reservation.

*Id.* at 83 (emphasis added). The record also included a finding by the trial court that Rodriguez's "plea of guilty is made freely and voluntarily." *Id.* at 88.

"Official records, such as this signed document, are entitled to a presumption of regularity and are accorded great evidentiary weight." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985). This plea agreement is strong evidence that Rodriguez was not coerced because it is entitled to that presumption of regularity.

Furthermore, at the time he signed the plea agreement, a jury had already convicted him of assault on a household member (enhanced). So he knew that he faced a sentence of twenty-five years to life in prison. But he also faced additional charges for the aggravated sexual assault of a child and indecency with a child—with a possible sentence of five years to life in prison. Clerk's R. (Case Two) 29, Plea Agreement, ECF No. 9-5. And additional charges for assault on a household member (enhanced)—with a possible sentence of twenty-five years to life

in prison. Clerk's R. (Case Three) 7, Plea Agreement, ECF No. 9-33. Under these circumstances, counsel's advice for Rodriguez to accept concurrent forty-year sentences "was within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771. Rodriguez cannot meet his burden of showing his counsel's performance was deficient or that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 689–94.

Consequently, Rodriguez cannot show the state habeas court's rejection of this claim was unreasonable. *Schriro*, 550 U.S. at 473. Moreover, Rodriguez cannot show that the state habeas court's judgment was an unreasonable application of clearly existing federal law. 28 U.S.C. § 2254(d)(2). And Rodriguez cannot show "that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Rodriguez is not entitled to federal habeas relief on this claim.

### B. Evidence of Extraneous Offenses

Rodriguez next asserts that his trial counsel improperly permitted the trial court to consider evidence of extraneous offenses or acts and evidence obtained in violation of his rights. Pet'r's Pet. 6, ECF No. 4.

The Eighth Court of Appeals explained when it affirmed the trial court's judgment that Rodriguez introduced a booking photograph of himself with a black eye "to support a defensive theory that Yvette [Talmates] had been the initial aggressor." *Rodriguez*, 2018 WL 2010551, *3. It further explained the State then offered "a different booking photograph in which [Rodriguez] had no visible injuries, along with a redacted booking sheet showing the booking time as June 29, 2015, the date of the charged offense." *Id.* It reasoned Rodriguez "opened the door to the admission of the State's booking photograph and thus evidence he had previously

-12-

been arrested and charged on another occasion." *Id.* Under these circumstances, the Eighth Court of Appeals' determination was not unreasonable. *Schriro*, 550 U.S. at 473.

Rodriguez's counsel may have erred in offering the wrong booking photograph. But "the Sixth Amendment does not guarantee errorless counsel." *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. 1981). As a result, a habeas court must rely on a "totality of circumstances standard with which to judge counsel's ineffectiveness or lack of it." *Id.* Judged by that standard, the Court—after considering the entire record—does not find that Rodriguez's trial counsel rendered ineffective assistance as a whole.

Moreover, the Court finds that Rodriguez has not shown that the state habeas court's judgment was an unreasonable application of clearly existing federal law. 28 U.S.C. § 2254(d)(2). And Rodriguez has not shown "that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Rodriguez is not entitled to federal habeas relief on this claim.

### C. Expert Witness

Finally, Rodriguez asserts the trial court abused its discretion when it admitted into evidence the testimony of an unqualified expert witness, Stephanie Carr, which resulted in an erroneous conviction. Mem. in Supp. 2, 9, 13, ECF No. 1-2.

The Eighth Court of Appeals gave the last reasoned opinion on this issue. *Rodriguez*, 2018 WL 2010551, *2. It noted Carr testified in detail about her expertise in the field of family violence. *Id.* It also noted Rodriguez did "not put forth any significant argument regarding the second inquiry of the qualifications test." *Id.* As a result, it rejected his claim. *Id.*

Rodriguez has not shown the state habeas court's rejection of this claim was unreasonable. *Schriro*, 550 U.S. at 473. And Rodriguez has not shown "that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Rodriguez is not entitled to federal habeas relief on this claim.

## EVIDENTIARY HEARING

A federal court's review of claims previously adjudicated on the merits by a state court "is limited to the record that was before the state court." *Cullen*, 563 U.S. at 181; *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011). A court may hold an evidentiary hearing only when the petitioner shows that (1) a claim relies on a new, retroactive rule of constitutional law that was previously unavailable, (2) a claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, or (3) the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have convicted the petitioner. 28 U.S.C. § 2254(e)(2).

Here, Rodriguez's petition asserts multiple claims already adjudicated on the merits in state court. He does not rely on a new rule of constitutional law or new evidence. The evidence of his guilt is overwhelming. Therefore, he is not entitled to an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability "may issue only if the petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) (quoting 28 U.S.C. § 2253(c)(2)). In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To warrant a grant of the certificate as to claims

that the district court rejects solely on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, Rodriguez has not made a substantial showing of the denial of a constitutional right. Thus, reasonable jurists could neither debate the denial of Rodriguez's § 2254 petition nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). The Court shall not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes that Rodriguez has not met his burden of showing that the state habeas court's judgment denying him relief was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. He has also not met his burden of showing that the state habeas court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The Court accordingly concludes that Rodriguez is not entitled to federal habeas relief. The Court also concludes that Rodriguez is not entitled to a certificate of appealability. The Court, therefore, enters the following orders:

**IT IS ORDERED** that the Rodriguez is **DENIED** an evidentiary hearing.

**IT IS FURTHER ORDERED** that Rodriguez's "Petition for a Writ of Habeas Corpus by a Person in State Custody" under 28 U.S.C. § 2254 (ECF No. 4) is **DENIED.**

**IT IS FURTHER ORDERED** that Rodriguez is **DENIED** a certificate of appealability.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED.**

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

SIGNED this 13th day of October 2020.

DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE